## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

LLOYAL WILLIE BRYANT
ADC#128117                                                         PETITIONER


VS.                          5:13CV00380 JLH/JTR


WENDY KELLEY, Director,
Arkansas Department of Correction[1]                              RESPONDENT

### RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge J. Leon Holmes. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the entry of this Recommendation. The failure to timely file objections may result in waiver of the right to appeal questions of fact.

Mail any objections to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

---

[1] Wendy Kelley became Director of the Arkansas Department of Correction on January 13, 2015, and is automatically substituted as Respondent pursuant to Fed. R. Civ. P. 25(d).

## I. Background

Pending before the Court is a § 2254 Petition for a Writ of Habeas Corpus filed by Petitioner, Lloyal Willie Bryant ("Bryant"). *Doc. 2*. Before addressing Bryant's habeas claims, the Court will review the procedural history of the case in state court.

On April 29, 2008, a Boone County jury convicted Bryant of two counts of rape and two counts of second-degree sexual abuse of his five-year old stepson, C.H. *Doc. 8-2*. He received an aggregate life sentence. *Id.*

Bryant appealed to the Arkansas Supreme Court, which affirmed on January 14, 2010. *Bryant v. State*, 2010 Ark. 7, 377 S.W.3d 152, (Ark. 2010). Among other things, the Court concluded that the victim's testimony alone was sufficient to sustain Bryant's convictions:

> C.H., at the time [of trial] six years old, testified that he lived with appellant and thought of him as a father. C.H. stated that while he lived with appellant—who C.H. identified as the defendant sitting in the courtroom—appellant touched him inappropriately on his "wiener" and "bottom." C.H. accurately located these areas on a diagram of body parts. He stated that appellant touched him with his hand, his arm, and his mouth. C.H. testified that appellant "sucked on" his "wiener." C.H. also said that he was forced to put appellant's penis in his mouth and that "white stuff came out."
>
> * * *
>
> Here, C.H. clearly identified appellant as the perpetrator and testified that appellant engaged in several different acts of a sexual nature, including appellant "sucking" on C.H.'s "wiener," appellant placing his penis in C.H.'s mouth, and appellant touching C.H. on his

2

"wiener" and bottom. Pursuant to our case law, C.H.'s testimony alone supported appellant's conviction for rape and sexual assault. Moreover, C.H.'s testimony illustrated that there were several different actions of sexual assault and rape—acts that can each be separated in time as involving distinct impulses where appellant touched C.H. on his penis and bottom and where appellant sought sexual gratification by performing sexual acts on C.H. and then sought sexual gratification by forcing C.H. to perform sexual acts on appellant. Therefore, we affirm on this point because there was sufficient evidence for the jury to convict appellant of two counts each of rape and second-degree sexual assault.

*Id.* at 7-8, 157-59.

On March 9, 2010, Bryant filed a *pro se* Rule 37 Petition in Boone County Circuit Court raising various ineffective-assistance of counsel claims. *Doc. 8-6*. The circuit court later appointed counsel for Bryant, and, on September 3, 2010, it conducted an evidentiary hearing. On April 15, 2011, the court entered an Order denying Rule 37 relief. *Doc. 8-7*.

Bryant appealed the denial of Rule 37 relief, and on September 15, 2013, the Arkansas Supreme Court affirmed. *Bryant v. State*, 2013 Ark. 305, 429 S.W.3d 193 (Ark. 2013).

On December 16, 2013, Bryant initiated this habeas action. *Doc. 2*. He argues that his trial lawyer was ineffective for: (1) failing to conduct an adequate investigation of the state's two "prior bad acts" witnesses; (2) inadequately cross-examining the victim; and (3) failing to cross-examine the state's "prior bad acts"

witnesses. *Id.* Respondent argues that Bryant's habeas claims are without merit. *Doc. 8*.

For the reasons discussed below, the Court recommends that the Petition be denied, and that the case be dismissed, with prejudice.

## II. Standard of Review Governing § 2254 Habeas Claims

A federal court will not grant habeas relief unless a state court's decision "was contrary to, or involved an unreasonable application of, clearly established federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

A state court decision is "contrary to" clearly established federal law if it reaches a conclusion opposite that of the Supreme Court on a question of law, or reaches a decision contrary to the Supreme Court on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court decision involves an "unreasonable application" of federal law when it identifies the correct legal rule, but unreasonably applies it to the facts. *Id.* at 407. "A state court's application of clearly established federal law must be objectively unreasonable, not merely incorrect, to warrant the granting of a writ of habeas corpus." *Jackson v. Norris*, 651 F.3d 923, 925 (8th Cir. 2011).

Finally, the state court's findings of fact are presumptively correct, and the habeas petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Stenhouse v. Hobbs*, 631 F.3d 888, 891 (8th Cir. 2011) (quoting 28 U.S.C. § 2254(e)(1)).

### III. Discussion

#### A.   Defense Counsel's Alleged Failure to Adequately Investigate and Cross-Examine the State's "Prior Bad Acts" Witnesses

Bryant's first and third ineffective-assistance of counsel claims relate to the two "prior bad acts" witnesses who testified at trial: C.L. (*not* C.H., the victim in this case), and C.L.'s mother. Over defense counsel's objection, C.L. and his mother testified about a prior sexual assault case in Montgomery County Arkansas in which Bryant entered a guilty plea (the "Montgomery County case").

At the time of C.L.'s testimony in *this case*, he was thirteen years old. He testified that, when he was younger, Bryant's wife babysat him. On several of those occasions, C.L. spent the night and slept in the same bed with Bryant and his wife. *Trial Tr. 383-385*. According to C.L.: (1) Bryant sometimes would touch C.L.'s "penis and butt," and put his finger and penis in C.L.'s "butt" (*Trial Tr. 389-90*); and (2) Bryant had C.L. touch Bryant's penis, after which Bryant ejaculated. *Trial Tr. 390-91*. C.L. testified that Bryant was often intoxicated during these incidents.

5

C.L.'s mother testified that her son was six to seven years old during the time frame when he spent the night at the Bryant house. *Trial Tr. 380-82.* Her son's allegations were investigated and Bryant later entered a guilty plea, in Montgomery County Circuit Court, to "something like sexual assault." *Trial Tr. 393-94.* Defense counsel declined to cross-examine C.L. or his mother.

The state also introduced into evidence the pertinent judgment and commitment order from the Montgomery County Circuit Court. *Trial Tr. 438-39.* It reflects that, on April 4, 2003, Bryant pleaded guilty to two counts of second-degree sexual assault. *Id.*

On direct appeal to the Arkansas Supreme Court, Bryant argued that the trial court erroneously admitted evidence from the Montgomery County case by applying the so-called "pedophile exception" to Ark. R. Evid. 404(b).[2] After finding that Bryant had *not* properly preserved the argument for appellate review, the Court went on to conclude that, as a matter of law, the argument also lacked merit:

> Regardless, the trial court did not err in allowing C.L. and his mother to testify because the testimony was admissible under the pedophile exception. Both witnesses testified that C.L. spent a lot of time with appellant while his wife served as babysitter and that C.L. often slept over at appellant's home. C.L.'s testimony regarding the sexual abuse

---

[2] The Arkansas Supreme Court recognizes a "pedophile exception" to the general prohibition against the introduction of prior bad acts evidence under Ark. R. Evid. 404(b). *Jeffries v. State*, 2014 Ark. 239, 434 S.W.3d 889 (Ark. 2014). The exception requires: (1) "a sufficient degree of similarity between the evidence to be introduced and the sexual conduct of the defendant;" and (2) an "'intimate relationship' between the perpetrator and the victim of the prior act." *Id.*

was similar in nature to the testimony of C.H., both victims were young boys at the time of the abuse, both testified that appellant was often intoxicated at the time of the abuse, and both were subjected to sexual abuse while staying in appellant's home.

*Bryant*, 2010 Ark. at 19, 377 S.W.3d at 163.

In Bryant's Rule 37 proceeding, he testified that C.L.'s trial testimony was a "completely different story" from a statement that he made to investigators in the Montgomery County case. According to Bryant, he told his lawyer to obtain the discovery from the Montgomery County case, which contained C.L.'s statement. Bryant contended that C.L.'s statement could have been used to: (1) cross-examine him and his mother; and (2) place evidence of the Montgomery County case outside of the "pedophile exception."

When pressed to explain how C.L.'s supposed "statement" in the Montgomery County case differed from his trial testimony, Bryant said that C.L. testified to a "rape," while Bryant pleaded guilty to "sexual assaulting" C.L., not "raping" him. *Rule 37 Tr. 92*. Bryant also emphasized C.L.'s testimony that Bryant used his penis: "He [C.L.] said [at trial] that I tried to stick my penis in his butt and that was never said in the discovery in Montgomery County. And he said it happened several times and on the discovery when I signed my plea bargain it was supposed to have happened one time so I don't know how you get one time out of several." *Rule 37 Tr. 92*.

7

Bryant's trial lawyer testified that he recalled obtaining information from the Montgomery County case file, but he could not recall whether he obtained any statement that C.L. made in that case.[3] *Rule 37 Tr. 99, 106*. He did not cross-examine C.L. or his mother because their "testimony wasn't terribly helpful to Mr. Bryant," and he "didn't see any need to exacerbate that testimony and keep going back to it." *Rule 37 Tr. at 100*.

In Bryant's Rule 37 appeal, the Arkansas Supreme Court concluded that defense counsel made a reasonable strategic decision not to pursue any more information in the Montgomery County case. Moreover, even assuming that defense counsel's decision was unreasonable, Bryant failed to demonstrate prejudice under the well-established *Strickland*[4] standard:

> [E]ven if the decision to not further investigate the incidents in Montgomery County had been unreasonable, appellant clearly did not demonstrate prejudice on this claim of ineffective assistance because he did not demonstrate that further investigation would have resulted in the discovery of evidence that would have allowed his attorney to better cross-examine the Montgomery County victim. During the Rule 37.1 hearing, appellant did not introduce a copy of any statement by the Montgomery County victim. Appellant did not establish that any statement had been recorded for counsel to have discovered. The discrepancies that appellant alleged could have been discovered were of limited value in cross-examining a child witness.

---

[3] At the Rule 37 hearing, the state introduced into evidence an affidavit that C.L.'s mother gave to investigators in the Montgomery County case. Bryant's trial lawyer thought that he had read the affidavit, but was not sure. *Rule 37 Tr. 106*. In the affidavit, C.L.'s mother states that C.L. answered "yes" when asked if Bryant "put his hands down his underwear" and "rubbed his penis." *Rule 37 Tr. 131-32*. C.L. also said that Bryant "stuck his finger up his [C.L.'s] butt the whole week that [C.L.] stayed with [Bryant.]" *Rule 37 Tr. at 133*.

[4] To prevail on a claim of ineffective assistance of counsel, the petitioner must show that counsel's representation fell below an objective standard of reasonableness, and that, but for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668 (1984).

> Appellant alleged in the Rule 37.1 hearing that the inconsistencies
> were those previously discussed, that is, that the victim testified that
> appellant had used his penis instead of his finger during the incidents,
> and that the incident described at trial by the Montgomery County
> victim was rape, not the sexual-assault charge to which appellant
> entered his plea. As noted above, the description of the statements that
> had been made by the victim in the Montgomery County case, which
> were included in the file and reviewed by counsel, were consistent
> with the victim's statement at trial, with the exception that the child
> testified that appellant had used his penis. Appellant did not allege
> facts to support his contention that the statement, if it existed,
> contained any information that counsel did not already have.

*Bryant*, 2013 Ark. at 8-9, 429 S.W.3d at 200. Likewise, the Court rejected Bryant's

claim that his lawyer was ineffective for declining to cross-examine C.L. and his

mother:

> Counsel testified at the Rule 37.1 hearing that he wanted to minimize
> the impact of the negative testimony concerning the Montgomery
> County victim's case. He indicated that he did not cross-examine the
> witnesses because any questions would have emphasized the
> testimony and had more detrimental impact than beneficial. We
> cannot say that the trial court was clearly erroneous in ruling that
> counsel made a reasonable, professional strategic decision, based on
> the information that counsel had at the time, not to cross-examine the
> two witnesses.

*Id.* at 6, 199.

Bryant now argues that the Arkansas Supreme Court unreasonably

adjudicated his ineffective-assistance of counsel claims. "Taken together, AEDPA

and *Strickland* establish a 'doubly deferential standard' of review." *Williams v.*

*Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (*quoting Cullen v. Pinholster*, 131 S. Ct.

1388, 1410 (2011)). On habeas review, the Court must give "substantial deference to the state court's predictive judgment," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Williams*, 695 F.3d at 831.

With respect to Bryant's argument that his lawyer should have obtained C.L.'s "statement," Bryant has come forward with nothing but his bald assertion to establish that such a statement ever existed. Even if it did exist, Bryant did not establish that he was prejudiced. While he maintains the statement could have been used to negate the application of the "pedophile exception," because he was not in an "intimate relationship" with C.L., his guilty plea to the Montgomery County charges unequivocally established that relationship. He pleaded guilty to an information charging him with second-degree sexual assault by "engaging in sexual contact with [a minor] and the [defendant] *was a temporary caretaker*[.]" *Rule 37 Tr. 125* (emphasis added). Furthermore, the alleged discrepancy between C.L.'s description of Bryant assaulting him with his finger, as opposed to his penis, was not meaningful in terms of the sex crimes to which Bryant pleaded guilty in Montgomery County Circuit Court, or to the similarity between the assaults on C.H. and C.L. Finally, defense counsel's decision to forego any cross-examination of C.L. or his mother, in an attempt to avoid reinforcing or repeating that testimony, was a reasonable tactical decision. *See Flowers v. Norris*, 585 F.3d 413,

10

417-418 (8th Cir. 2009) ("strategic and tactical decisions by counsel, though they may appear unwise in hindsight, cannot serve as the basis for an ineffective-assistance claim under *Strickland*.").

Under these circumstances, the Court concludes that the Arkansas Supreme Court's resolution of Petitioner's ineffective assistance of counsel claims was neither "contrary to" nor an "unreasonable application of clearly established federal law," nor was it based on an "unreasonable determination of the facts." *See* 28 U.S.C. § 2254(d) and (e).

### B. Defense Counsel's Alleged Failure to Adequately Cross-Examine the Victim

Finally, Bryant argues that his trial lawyer "failed to adequately attack inconsistencies in the victim's [CH's] testimony[.]" *Doc. 2 at 9*. At his Rule 37 hearing, Bryant testified that, during his trial lawyer's cross-examination of C.H., he should have done more to highlight alleged discrepancies between what C.H. told investigators and his trial testimony about: (1) who was in the home when Bryant assaulted C.H.; (2) where in the home the sexual assaults occurred; and (3) who talked to C.H. about the sexual assaults prior to trial. *Rule 37 Tr. 71-76*. Bryant's trial lawyer testified that C.H. came across as a "typical five-year old young man," and that he thought "it was best in my [cross-examination] [not] to pick on him too hard in front of the jury . . . in hopes that the jury would say oh, you know, he's got an active imagination [and] an active mind." *Rule 37 Tr. 103*.

11

The Arkansas Supreme Court rejected Bryant's argument that his lawyer did not adequately cross-examine C.H.:

> Appellant points to statements that the victim made on direct and cross-examination that he contends could be interpreted as inconsistent, in that there are references to rooms and people that appellant asserts indicate different descriptions by the child as to where the incidents occurred and who was at home at the time. We agree with the trial court's determination that some of these statements, taken in context, were not inconsistent and that the remaining statements could easily be interpreted by the jury to be reconciled.
>
> How aggressively to cross-examine a six-year-old child such as the victim here, much like a decision whether to call a particular witness, is a decision that is largely a matter of professional judgment in which trial counsel must use his or her best judgment to determine what questioning will be beneficial to the client, and the decision must be assessed by taking into account that the decision is a matter that experienced advocates could endlessly debate.
>
> * * *
>
> We cannot say that the trial court clearly erred in finding that the discrepancies in the testimony that appellant identified were not sufficient to alter the outcome of the trial, or that counsel was not ineffective for failing to vigorously cross-examine the victim on those inconsistencies.

*Bryant*, 2013 Ark. at 10-11, 429 S.W.3d at 209 (internal citations omitted).

Bryant's trial lawyer in fact cross-examined C.H. about issues such as Bryant spanking him, who was in the home when Bryant "touched" him, and who he talked with about the case. *Trial Tr. 269-80*. While Bryant argues that his lawyer should have somehow cross-examined C.H. further, courts "generally

entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *United States v. Orr*, 636 F.3d 944, 952 (8th Cir. 2011).

Under the deferential standard of review this Court must apply in habeas cases, it concludes that the reasons given by the Arkansas Supreme Court for rejecting Bryant's ineffective-assistance of counsel claim were neither "contrary to" nor an "unreasonable application of clearly established federal law," nor were they based on an "unreasonable determination of the facts." *See* 28 U.S.C. § 2254(d) and (e).

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1.      The Petition for a Writ of Habeas Corpus be DENIED, and this habeas action be DISMISSED, WITH PREJUDICE; and

2.      A Certificate of Appealability be DENIED pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases.

DATED this 3rd day of April, 2015.

_____
UNITED STATES MAGISTRATE JUDGE